Adams's Estate.    Martin's Appeal.

*Decedent's estate—Equitable conversion—Construction of will.*

A testatrix by her will, after providing for her children and grandchildren, directed that the balance of her personal estate, after the payment of debts and legacies, should go to two sisters, and then further provided "in order to pay any of my debts or any of the aforesaid legacies, I authorize, empower and direct my executors hereinafter named to sell" a specific house, giving the usual powers of conveyance, etc. Testatrix made no alternative disposition of the house.

*Held*, that the power of sale was absolute and worked a conversion of the real estate.

Luffberry's Appeal, 125 Pa. 513, distinguished.

*Absolute power of sale—Conversion not to be defeated by heirs.*

In this estate it appeared that before the sale of the house in question there was a deficit of $320 in the personal estate. One of the heirs at law, who had a claim of $641 against the estate, abated sufficient to prevent this deficit, and claimed that, the debts and legacies being then all paid, the sale of the house was unnecessary and no conversion effected.

*Held*, that the power of sale conferred upon the executors was not defeasible by the act of a creditor, and that the intestacy thus sought to be brought about on the part of the testatrix would not be recognized by the court, for the mere purpose of defeating the residuary legatees.

Argued Jan. 20, 1892. Appeal, No. 154, July T., 1891, by Mary Martin et al., residuary legatees, from decree of O. C. Philadelphia Co., April T., 1890, No. 140, in the estate of Jane Adams, deceased. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and McCOLLUM, JJ.

The testatrix, Jane Adams, by her will, gave sundry pecuniary legacies, and devised several pieces of real estate, and then concluded as follows:

"Seventh. All the balance of my personal estate, after the payment of my debts and the aforesaid legacies, I give, devise and bequeath unto my said two sisters, Mary Martin and Isabella Walk, their heirs, executors and administrators.

"Eighth. In order to pay any of my debts or any of the aforesaid legacies, I authorize, empower and direct my executors hereinafter named to sell, either at public or private sale, my house and lot of ground, No. 1739 Latona street, to make, execute and deliver unto the purchaser or purchasers thereof all necessary deeds of conveyance, and without any liability on the part of the purchaser or purchasers to see to the application of the purchase money."

Within three weeks of the date of the death of the testatrix, her executor advertised and sold this particular piece of real estate. The two sons of the testatrix, who were her only heirs at law, objected to the sale on the ground that the personal estate of the testatrix was primarily liable for the payment of her debts and legacies and was sufficient for the purpose, and that therefore no reason existed why the real estate should be sold. Upon their petition an injunction was granted and the matter

referred to an examiner and master, and while it was still pending, the account of the executor having been filed came up for audit. The master, Robert J. Williams, Esq., reported in favor of the sale.

At the audit it appeared that the personal estate amounted to $1,819.80, and the debts and legacies to $1,250, in addition to which Thomas Adams, one of the testatrix's heirs, presented a claim for $641, offering at the same time to abate the claim to such an extent that the personal estate should not be exhausted. The auditing judge (ASHMAN, J.) held that the accountant was justified in making the sale, saying:

" He was not bound to await a judicial determination of the validity and amount of the indebtedness where there was no reason to suspect fraud or mistake. But the will authorized him to sell in order to pay any of the debts or legacies, and he received, moreover, from Thomas Adams a letter from the counsel of the claimant, setting forth that Thomas Adams was entitled to two thirds of the rents of both houses, which, if allowed, would unquestionably have required the sale to be effected. As to the terms of the power, it is sufficient to say that if the testatrix did not intend to sell she must have intended to die intestate of the property, because she made no disposition of it as realty. On the other hand, if when she directed her executor to sell in order to pay any debt or given legacy, she intended a conversion, her whole will was consistent, because her residuary gift embraced all her personal estate in payment of legacies. The auditing judge thinks that the injunction should be dissolved and the sale confirmed, and so decrees."

Exceptions to the adjudication filed on behalf of the heirs of the testatrix were sustained by the court in an opinion by FERGUSON, J., and the executor enjoined from selling the real estate, or distributing the proceeds thereof in payment of legacies, the court holding that the same had not been converted, but remained the property of the heirs at law.

Mary Martin and Isabella Walk, residuary legatees, took this appeal.

*Errors assigned* were (1) refusal to sustain a conversion of the Latona street house and lot; (2) failure to distribute the balance of the fund realized by such sale as personalty to the residuary legatees.

*Hampton L. Carson, Alfred I. Phillips* and *J. Levering Jones* with him, for appellants.—The direction to sell worked the equitable conversion, and the right to make the actual conversion followed as a necessary consequence: Evan's Ap., 63 Pa. 183; Hunt's Ap., 105 Pa. 141; Luffberry's Ap., 125 Pa. 513.

*J. Campbell Lancaster, William Henry Lex* with him, for appellees.—In the seventh clause of her will, testatrix expressly pointed out that debts, etc., should be paid out of personal property. In the eighth, she simply provided which piece of real estate should be sold in case it were necessary to sell at all. The courts will resolve every doubt against a conversion: Swift's Ap., 87 Pa. 502; Peterson's Ap., 88 Pa. 397; Page's Est., 75 Pa. 87; Nagle's Ap., 13 Pa. 260; Hamlin v. Thomas, 24 W. N. C. 4; Curry's Est., 5 County Ct. 598; Ackroyd v. Smithson, 1 B. & C. 437; Bispham's Eq., 379; Bloodgood's Est., 26 W. N. C. 336; Maugham v. Mason, 1 V. & B. 409; Wilson v. Major, 11 Ves. 205; Berry v. Usher, 11 Ves. 88; Gibbs v. Rumsey, 2 V. & B. 294; Kellet v. Kellet, 3 How. 248; Wilson v. Hamilton, 9 S. & R. 431; Luffberry's Ap., 125 Pa. 513; Machemer's Est., 140 Pa. 544.

OPINION BY MR. JUSTICE WILLIAMS, April 11, 1892:

The objects of the testatrix's bounty were her children, two in number, her grandchildren and her sisters. She first provided for her children and grandchildren by specific devises, which included three dwelling-houses in the city of Philadelphia, and by pecuniary legacies amounting to $1,000. She still had her personal estate and one dwelling-house remaining with which to provide for the payment of her legacies, her debts, the expenses of administration, and for her two sisters. Her debts amounted to about $1,000, so that at least $2,000 would be needed to pay them and the legacies, without taking the expenses of settling her estate into account. Her personal estate realized a little over $1,400. She foresaw the necessity of adding to it in order to carry out her purpose to make some provision for her sisters, and she accordingly directed her executors to sell the house and lot on Latona street, to pay out of the funds thus provided all her legacies and debts and the expenses of administration, and give the residue to her two sisters. This completed the disposal of all her property, real and per-

sonal, by her will. Among her creditors, and the largest among them, is one of her sons. He now proposes to release several hundreds of dollars of his demand so as to enable the executors to pay the legacies and remaining debts out of the personal estate, alleging that the direction to sell was conditional, and that, if the payment of the debts and legacies did not require a sale, the executors had no power under it, but that the residuary legacy would fail, and the house descend under the intestate laws to himself and brother. This position rests on the circumstance that the testatrix, after giving the power of sale and the direction in her will, added, by way of explanation, the words : " In order to pay any of my debts or any of the aforesaid legacies." We do not think this was intended as a limitation on the power, as though she had said : " But the sale shall not be made unless it becomes necessary to the payment of my debts and pecuniary legacies." She made no alternative disposition of the house and lot, as would have been natural if she had contemplated the possibility of its sale not being necessary to carry out the provisions of her will. If the power is not unconditional, but may be defeated in the manner proposed, then the testatrix becomes intestate as to this house and lot, and her intended bounty to her sisters fails. We cannot adopt the conclusions of the court below upon this subject, because we believe that to do so would require us to disregard the evident intention of the testatrix to dispose of her entire estate by her will. It would require us to attach a condition to the direction to sell which the testatrix made unconditional. It would disregard the rule that the will is to speak from the death of the maker. The creditors or legatees of Mrs. Adams may release her estate from liability to them for part or all of their just claims against it, but such release will not change the scheme of the will. It will increase the residuary estate, but it will not extinguish it. Luffberry's Ap., 125 Pa. 513, is not in point. In that case bequests to charities fell because of the provision of the act of April 26, 1855, which rendered them void if the testator died within one calendar month after the date of the will. The purpose of the power of sale in that case failed because the charities, to which the proceeds were to go by the express terms of the will, fell by reason of the statute. Here the power is an unlimited one. Its exercise is clearly

necessary to carry out the intentions of the testatrix. And we are of opinion that a creditor cannot defeat her intentions and revoke her directions to her executors by releasing part or all of his claims upon her estate.

The decree of the orphans' court is now reversed, and distribution directed in conformity with the findings and decree of the auditing judge.

Counsel for appellees moved for a reargument, relying upon the case of Ackroyd v. Smithson, 1 Bro. Ch. Cases, 503.

OPINION BY MR. JUSTICE WILLIAMS, May 2, 1892:

The petition on which this motion rests is so broad in its statements that we are disposed to say a few words in explanation of our action in refusing it. It is alleged that the case, as presented in this court upon the argument, was ruled by Ackroyd v. Smithson, 1 Bro. Ch. Cases, 503, and that, upon the facts, it is absolutely certain that not only is the executor without power to sell the Latona street house, but, if a sale had been made, the heirs at law, and not the residuary legatees, would be entitled to the proceeds. What was the case of Ackroyd v. Smithson? A testator gave several specific legacies to as many different persons, by name, making no provision against the death of any of them before his will could become operative. He directed his executors to sell all his estate, real and personal. From this general fund they were to pay his debts, his legacies, and the expenses of his burial, and of the settlement of his estate. He anticipated that a considerable sum would remain after this was done, and he provided that it should be divided among the legatees in proportion to their respective legacies. It so happened that two of the legatees died in the lifetime of the testator, and the legacies to them lapsed. The sum that would have been payable to them if living was claimed as follows : First, by the surviving legatees. Second, by the next of kin, as personalty not disposed of by the will. Third, by the heir at law, as land, so far as the fund was produced by the sale of real estate. It was evident that a contingency had arisen, for which the testator had made no provision, and the law was appealed to for a rule by which the executors might be guided. Mr. Scott, afterwards Lord EL-DON, represented the heir at law, and, by a really masterly

discussion of the questions involved, carried the court with him to the following conclusions, viz. : The surviving legatees were not entitled to take the fund, for the very good reason that it was not given to them. The next of kin were not entitled to so much of it as represented real estate, because the purpose of the conversion had failed, quoad the lapsed legacies, by reason of the death of the legatees in the lifetime of the testator. The heir at law was entitled to take, as land, all that represented the proceeds of land; for to that extent the testator being intestate, his land would fall to the heir. In this case we have very different facts, and consequently different questions. Mrs. Adams provided for the heirs at law by specific gifts. For the residue she named residuary legatees. They survived her, and are competent to take under her will. The effort of the heirs at law is to defeat the residuary estate by preventing the sale of the Latona street house, which she directed her executors to sell. To do this they seek to incorporate into the direction a condition which she did not make; and to make the condition effective to prevent a sale they change the state of facts existing at her death by the release of a debt due them from her estate. Having done this, they claim to have brought about an intestacy as to the Latona street house, and to be entitled to secure it to themselves under the intestate laws. The whole scheme depends on whether the executors have a power of sale that is defeasible by the act of a creditor, and that is the question that controls the case. Ackroyd v. Smithson affords no help in the solution of that question, or in the decision of this case. The question there was, what will the law do with a fund which was raised for a purpose that has failed, and for which the testator has made no further provision? The question here is, whether a fund raised for a purpose that has not failed, shall go in accordance with the directions of the testator, or whether a creditor, by the simple release of his debt, can defeat the intentions of the testator, create an intestacy by his act, and divert a considerable part of the estate from the objects of the testator's bounty to himself? We have no doubt that this question was rightly decided, and the motion is refused.